UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

SONIA KUESSNER,                    )
                                   )
            Plaintiff,             )
                                   )
      vs.                          )      Case No.  1:17-CV-57-AGF
                                   )
JUSTIN WOOTEN,                     )
                                   )
            Defendant.             )

## MEMORANDUM AND ORDER

Plaintiff Sonia Kuessner filed this civil action seeking money damages for

unreasonable seizure against Scott County Deputy Sheriff Justin Wooten under 42 U.S.C.

§ 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

The case is now before the Court on Wooten's motion for summary judgment.  ECF No.

21.  For the reasons set forth below, the motion for summary judgment will be granted.

## BACKGROUND

The record establishes the following for the purpose of the motion before the

Court.[1]  On the evening of October 22, 2016, Kuessner was a passenger in a motor

---

[1]      Wooten argues that Kuessner failed to provide a statement of additional facts in
violation of Local Rule 4.01(E) and that, therefore, there are no genuine disputes of
material fact.  ECF No. 40 at 2.  In support of this argument, Wooten cites a ruling by the
undersigned where the nonmoving party failed to respond whatsoever to a motion for
summary judgment, and the statements of the movant were thus deemed admitted.  *See*
*Harrison v. Sachse*, No. 4:15cv631 AGF, 2016 WL 728306, at *4 (E.D. Mo. Feb. 24,
2016).  Here, Kuessner filed a response to Wooten's statement of material facts (ECF No.
35) in which she responded to each of Wooten's alleged material facts with either an

vehicle being driven by Mitch Wood in Scott County, Missouri. Scott County Deputy

Toby Haynes stopped the vehicle due to an inoperable headlight. Wood was taken into

custody on an outstanding warrant for failure to pay a traffic ticket. Haynes informed

Kuessner that Wood would be released if Kuessner obtained a money order, and Haynes

provided directions to a facility where Kuessner could acquire one. After being unable to

procure a money order at the facility that Haynes directed her to, Kuessner called the

Scott County Sheriff's Department and was given directions to a different money order

location. After getting the money order in Sikeston, Missouri, Kuessner drove it to the

Scott County Sheriff's Office in Benton, Missouri.

Kuessner arrived at the Scott County Sheriff's Office around 4:00 a.m. on

October 23, 2016. After entering the lobby, Kuessner informed a dispatcher over the

intercom that she was there with a money order for Wood. The dispatcher then notified

Wooten that a woman was in the lobby to pick up Wood. Kuessner had keys in one of

her hands while she waited in the lobby. The subsequent details of Kuessner's arrest

were recorded by Wooten's body camera: Wooten entered the lobby and greeted

Kuessner. Kuessner was standing next to a service window in the lobby. There was one

other person in the lobby—a male seated across the lobby from where Kuessner stood.

Wooten informed Kuessner that since Wood was arrested for driving while intoxicated

---

admission or denial, and when denied, Kuessner provided references to portions of the
record as required by Local Rule 4.01(E).

("DWI"),[2] Wood had to be released to a sober person. Wooten then asked Kuessner, "Have you been drinking?" Kuessner responded: "I have had a couple of drinks." Wooten then asked Kuessner to take a preliminary breath test ("PBT"), gesturing with a piece of equipment in his hand, to determine her intoxication level. Wooten assured Kuessner that if Kuessner just blew .08, she would be "good." Kuessner declined to take the test, and Wooten then arrested her. Wooten told Kuessner that she was being arrested for driving while intoxicated because he could smell alcohol on her breath, her eyes were bloodshot, and she drove to the Sheriff's Office. Wooten had not observed Kuessner arriving to the Sheriff's Office, and Wooten did not administer any type of sobriety test on Kuessner before the arrest. The entire encounter between Kuessner and Wooten leading up to Kuessner's arrest lasted approximately 20 seconds.

In an affidavit submitted in support of his summary judgment motion, Wooten states that before arresting her, Wooten observed that Kuessner's eyes were bloodshot, watery, and glassy, and he smelled an odor of alcohol on Kuessner's breath. However, Wooten testified in a deposition in this case that the smell of alcohol on Kuessner at the time of the arrest was "faint." ECF No. 35-5 at 2, Wooten Dep. 15:1. Wooten also described Kuessner's speech at the time of arrest as "normal," her attitude as "polite and cooperative," and her balance and walking as "fair." Wooten Dep. 21:1-9, 22:4-6.

---

[2] Although it is not clear from the record, it appears that after being taken into custody on the warrant and upon arrival at the Scott County Jail, Wood was placed under arrest for a DWI.

Kuessner admits that when she was arrested her eyes were "likely" bloodshot[3] and it is "possible" she smelled of alcohol. ECF No. 22-2 at 11, Kuessner Dep. 67:3-6, 15-20.

No formal charges were ever brought against Kuessner. However, Kuessner's mug shot was later made public, and her arrest was broadcast on local media. At the time, Kuessner was Superintendent of Schools for the Van Buren School District in Missouri.

Kuessner brings one count of unreasonable seizure against Wooten in his individual capacity only, under 42 U.S.C. § 1983. According to Kuessner, Wooten arrested her without probable cause or other sufficient constitutional justification in violation of her Fourth Amendment right to be free from unlawful seizure. Kuessner alleges that as a direct and proximate result of Wooten's conduct, she suffered emotional harm and distress; monetary loss in that she was terminated as Superintendent; public humiliation and ridicule; and other damaging injuries.

## ARGUMENTS OF THE PARTIES

Wooten seeks summary judgment under Federal Rule of Civil Procedure 56, arguing that the undisputed material facts demonstrate that he had probable cause to arrest Kuessner for violating Missouri's DWI statute. In addition, Wooten argues that Kuessner's action is barred by qualified immunity because at the very least, Wooten had "arguable probable cause" to arrest Kuessner. For probable cause to believe that

---

[3] The condition of Kuessner's eyes is not easily discernable from the body camera video.

Kuessner was intoxicated, Wooten points to the facts that Kuessner admitted to having had a couple of drinks; Wooten smelled alcohol on Kuessner's breath; Wooten observed Kuessner's eyes to be bloodshot, watery, and glassy; and Kuessner refused to take a PBT. For probable cause to believe that Kuessner had operated a vehicle while intoxicated, Wooten highlights the facts that Wooten observed Kuessner standing by herself in the lobby of the Sheriff's Office at 4:00 a.m. with a set of keys in her hands; and Wooten knew that a woman was at the Sheriff's Office to pick up Wood. Wooten argues that it was reasonable to infer from these facts that Kuessner operated a motor vehicle to get to the Sheriff's Office.

Kuessner disputes that summary judgment is proper here, arguing that Wooten did not have probable cause or arguable probable cause to believe that Kuessner had been operating a vehicle before he arrested her. Kuessner also disputes that the indicia of intoxication used by Wooten were sufficient to support even arguable probable cause for a DWI arrest.

## DISCUSSION

### Summary Judgment Standard

Federal Rules of Civil Procedure Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he burden of demonstrating that there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences that may be reasonably drawn

[therefrom] in the light most favorable to the non-moving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015). "The nonmoving may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation . . . ." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (citations omitted).

## Qualified Immunity

"To defeat a motion for summary judgment based on qualified immunity, the plaintiff must put forth facts showing that the officer's conduct violated a constitutional right, and that the right was clearly established at the time of the alleged misconduct." *Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018). "The district court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986). To determine whether an officer had probable cause for an arrest, courts "must examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018) (citations omitted). "Probable cause is not a high bar." *Id.* "It requires only a probability or substantial chance of

criminal activity, not an actual showing of such activity." *Id.* And "[b]ecause the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim is not probable cause in fact but arguable probable cause," meaning, "whether the officer should have known that the arrest violated plaintiff's clearly established right." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005).

In *Wesby*, the Supreme Court discussed the "clearly established" prong of the qualified immunity analysis in the Fourth Amendment context. A clearly established legal principle is one that has "a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S.Ct. at 589. "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589-90 (internal citation omitted).

But because in the Fourth Amendment context, "officers will often find it difficult to know how the general standard of probable cause applies," the Court in *Wesby* stressed "the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Id.* at 590 (citation omitted). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate." *Id.* (citation omitted). Only in the "rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear" is the need to find existing precedent addressing similar circumstances excused. *Id.* (citation omitted). Otherwise, "a body of relevant case law is usually necessary to 'clearly establish' the

answer with respect to probable cause." *Id.*

**DWI Arrest**

Even viewing the facts in the light most favorable to Kuessner, Kuessner has not cited and the Court has not identified any case where "an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Id.* at 590. Nor does the precedent existing at the time of the incident place the lawfulness of Kuessner's arrest "beyond debate." *See id.* Thus, although it is a close question, Kuessner has not demonstrated the deprivation of a constitutional right that was clearly established at the time of the arrest, and Wooten is entitled to summary judgment based on qualified immunity.

Missouri's DWI statute states that "[a] person commits the offense of driving while intoxicated if he or she operates a vehicle while in an intoxicated condition." Mo. Rev. Stat. § 577.010. Kuessner asserts that Wooten lacked arguable probable cause with respect to both elements: that Kuessner (1) operated a vehicle, or (2) was intoxicated while doing so. With respect to the latter, the legal landscape as it existed at the time of the arrest supports Wooten's position that he had at least arguable probable cause to believe that Kuessner was intoxicated.

A law enforcement officer need not administer any field sobriety tests in order to develop probable cause to believe that a person is intoxicated. *Findley v. Dir. of Revenue*, 204 S.W.3d 722, 727 (Mo. Ct. App. 2006). Rather, an officer may obtain probable cause to believe a suspect is intoxicated from other sources of information.

*Saladino v. Dir. of Revenue*, 88 S.W.3d 64, 71 (Mo. Ct. App. 2002).

Considering the totality of circumstances here, including Kuessner's admission to having had a couple of drinks in response to questioning regarding her sobriety; Kuessner's bloodshot eyes and the smell of alcohol on Kuessner's breath, even if faint (facts which Kuessner does not dispute); and Kuessner's refusal to take a PBT, a reasonable officer could have concluded that Kuessner was intoxicated. *See, e.g.*, *Schaffer v. Beringer*, 842 F.3d 585, 592 (8th Cir. 2016) (considering watery eyes and the smell of alcohol in support of finding arguable probable cause for a driving under the influence arrest); *McFall v. Dir., Dep't of Revenue*, 162 S.W.3d 526, 532 (Mo. Ct. App. 2005) (noting that an odor of intoxicants on a suspect's breath and a suspect's bloodshot eyes "are recognized indicia of intoxication"); *Findley*, 204 S.W.3d at 727-28 (holding that an individual's "refusal to submit to [a] PBT is evidence supporting a reasonable belief by [an arresting officer] that [the individual] was intoxicated"). Of course, a contrary conclusion could also be reasonable. For example, there are many other reasons a person could have bloodshot eyes, especially 4:00 a.m. But probable cause does not require officers to rule out all innocent explanations. *United States v. Perry*, 908 F.3d 1126, 1129 (8th Cir. 2018).

Kuessner relies on a 2018 Missouri Court of Appeals opinion, *Rocha v. Director of Revenue*, 557 S.W.3d 324 (Mo. Ct. App. 2018), to argue that the smell of alcohol and bloodshot eyes, alone, do not support an arguable probable cause finding regarding intoxication. But as Wooten correctly points out, *Rocha* was decided nearly two years

after the arrest in this case, whereas the qualified immunity analysis depends on "the state of the law at the time of the incident." *See Cravener v. Shuster*, 885 F.3d 1135, 1140 (8th Cir. 2018). Moreover, the factual circumstances in *Rocha* were somewhat distinguishable from the facts in this case in that the *Rocha* arrestee's last reported drink was 15 hours prior to his encounter with the officer. *Rocha*, 557 S.W.3d at 327. Specifically, in response to the officer's question as to how much the suspect had to drink at a stop that occurred at approximately 3:00 in the afternoon, the suspect in *Rocha* stated he drank "maybe like last night," referring to midnight the night before, and without indicating how many drinks he had. *Id.* at 326. Here, Kuessner admitted to having had a couple of drinks, and there was no suggestion of a significant time gap. This distinction, particularly in light of the earlier opinions from the same court discussed above, suggests that even if *Rocha* were part of the precedent existing at the time of the arrest, it would not have placed the question of arguable probable cause "beyond debate."

A closer question is presented with respect to Wooten's arguable probable cause to believe that Kuessner operated a vehicle while intoxicated. Wooten admittedly did not observe Kuessner operating a vehicle before arresting her. However, "[t]o form a belief amounting to probable cause [that a suspect drove in an intoxicated condition], the arresting officer does not have to see the suspect driving." *Saladino*, 88 S.W.3d at 70. Nor does the officer need an admission from the suspect or a witness report that the suspect operated a vehicle. *Id.* The officer may instead "rely upon circumstantial evidence," provided that it rises above "mere suspicion." *Id.*

In this case, Kuessner admits that she had keys in her hand while she stood apparently alone in the lobby, the only other person being seated some distance away. It was around 4:00 a.m., and Wooten was aware that Kuessner had arrived at the Sheriff's Office to pick up another person. The Court takes judicial notice that the population of Benton, Missouri, where the Sheriff's Office is located, is less than 1,000, and one could reasonably infer that an individual arriving at the Office at 4:00 a.m. used a motor vehicle rather than, say, public transportation, to get there. Thus, considering the totality of the circumstances, as well as "common sense conclusions about human behavior," *Wesby*, 138 S.Ct. at 587, the Court cannot say that Wooten's inference that Kuessner had driven a motor vehicle to the Office was objectively unreasonable.

The caselaw cited by Kuessner in opposition to Wooten's motion does not hold otherwise. Rather, to the extent they address probable cause at all,[4] those cases involved factual circumstances not present here—namely, when an officer discovers an intoxicated individual in a motionless vehicle—and each was decided differently based on the particular facts at issue. *Compare Cox v. Director of Revenue*, 98 S.W.3d 548, 550-51 (Mo. 2003) (holding that an officer had probable cause to arrest a suspect for operating a

---

[4]     Kuessner's reliance on *State v. Chambers*, 207 S.W.3d 194 (Mo. Ct. App.) is even less relevant as, in addition to involving distinguishable factual circumstances (relating to an intoxicated person found alone in a motionless car), *Chambers* addressed the "much higher burden of proof beyond a reasonable doubt of operation of the vehicle required to sustain a conviction in a criminal case," 207 S.W.3d at 198. "There is a vast gulf between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt." *Stuart v. Dir. of Revenue*, 488 S.W.3d 743, 749 (Mo. Ct. App. 2016) (citations omitted).

motor vehicle while intoxicated where the intoxicated suspect was sitting behind the steering wheel of a motionless car, the key was in the ignition, and the engine was running), *with Bain v. Wilson*, 69 S.W.3d 117, 121 (Mo. Ct. App. 2002) (holding that an officer lacked probable cause for a DWI arrest where the only information the officer possessed at the time of the arrest was that the intoxicated suspect was found alone in a van sometime after the van had been in an accident)*, overruled on other grounds by Verdoorn v. Dir. of Revenue,* No. WD 60784, 2002 WL 31452804 (Mo. Ct. App. Nov. 5, 2002)*, and overruled on other grounds by Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543 (Mo. 2003). Far from demonstrating "settled law" on the subject, these cases only confirm that the probable cause analysis with respect to operating a vehicle for a DWI arrest, as in any other context, is "a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *Wesby*, 138 S. Ct. at 586.

For these reasons, even if Wooten lacked actual probable cause, a reasonable officer looking at the entire legal landscape at the time of Kuessner's arrest could have interpreted the law as permitting the arrest here. Neither Kuessner nor the Court has identified a precedent finding a Fourth Amendment violation under similar circumstances. And it is not clear to the Court that this is one of the "rare obvious case[s]" where "a body of relevant caselaw" is unnecessary. *Id.* at 591. Wooten is thus entitled to summary judgment based on qualified immunity.

## **CONCLUSION**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (ECF No. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED as moot**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day of December, 2018.